# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
## No. 21-0596V

ERIC AHLSTROM,

                 Petitioner,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

                 Respondent.

Chief Special Master Corcoran

Filed: May 15, 2024

*Jonathan Joseph Svitak, Shannon Law Group, P.C., Woodridge, IL,* for Petitioner.

*Jamica Marie Littles, U.S. Department of Justice, Washington, DC,* for Respondent.

## RULING ON ENTITLEMENT[1]

On January 12, 2021, Eric Ahlstrom filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that he suffered a left shoulder injury related to vaccine administration ("SIRVA"), a defined Table Injury, after receiving influenza ("flu") vaccine on September 29, 2020. Petition at 1, 1 ¶¶ 2, 13. Having filed the Petition before the expiration of the six-month period post-vaccination required by the Act to establish

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

severity,[3] Petitioner further alleged that he "sustained a left shoulder SIRVA injury which w[ould] require treatment for a period of at least six months." *Id.* at ¶ 13.

The parties dispute whether the "severity requirement" necessary for all Program claims is met. For the reasons discussed below, I find that Petitioner likely suffered the residual effects of his SIRVA for more than six months, and he has satisfied the other requirements of a compensable Table SIRVA injury. Petitioner is thus entitled to compensation under the Vaccine Act.

## I.    Relevant Procedural History

During the subsequent 20-month period after filing the Petition, Mr. Ahlstrom filed the declaration[4] and medical records required under the Vaccine Act. Exhibits 1-5, ECF Nos. 8, 11, 13, 20, 23; *see* Section 11(c). On March 13, 2022, I ordered Petitioner to file additional medical records and other evidence to show the site of vaccination and to establish that he suffered the residual effects of his injury for more than six months. ECF No. 18. On September 12, 2022, the case was activated and assigned to the "Special Processing Unit" (OSM's adjudicatory system for resolution of cases deemed likely to settle). ECF No. 25.

Almost one year later, on September 11, 2023, Respondent filed his Rule 4(c) Report opposing compensation in this case. ECF No. 29. Emphasizing the progress made by Petitioner's last physical therapy ("PT") on March 9, 2021, approximately five and one-half months post-vaccination, Respondent insists Petitioner has failed to provide sufficient evidence to satisfy the Vaccine Act's severity requirement. *Id.* at 6-7. He maintains that the symptoms Petitioner described more than a year later, in May 2022, cannot be connected to the vaccine he received in September 2020. *Id.* at 7.

The matter is now ripe for adjudication.

---

[3] Petitioner likely filed the Petition, without medical records, due to the potential removal of SIRVA from the Vaccine Injury Table. On July 20, 2020, the Secretary of Health and Human Services proposed the removal of SIRVA from the Vaccine Injury Table. National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Proposed Rule, 85 Fed. Reg. 43794 (July 20, 2020). The proposed rule was finalized six months later. National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Final Rule, 86 Fed. Reg. 6249 (Jan. 21, 2021). Approximately one month later, the effective date for the final rule was delayed. National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Delay of Effective Date, 86 Fed. Reg. 10835 (Feb. 23, 2021) (delaying the effective date of the final rule until April 23, 2021). On April 22, 2021, the final rule removing SIRVA from the Vaccine Table was rescinded. National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Withdrawal of Final Rule, 86 Fed. Reg. 21209 (Apr. 22, 2021).

[4] These declarations were signed under penalty of perjury as required by 28 U.S.C.A. § 1746. Exhibits 7-8.

## II.      Finding of Fact Regarding Onset and Duration

At issue is whether Petitioner continued to suffer the residual effects of the SIRVA for more than six months. Section 11(c)(1)(D)(i) (statutory six-month severity requirement).

### A.      Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did

not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## B.    Analysis

I make the severity finding after a complete review of the record to include all medical records, affidavits or declarations, and additional evidence filed. Specifically, I base the findings on the following evidence:

- Prior to vaccination, Petitioner suffered from common illnesses (sore throat) and skin conditions requiring treatment by a dermatologist, underwent a hernia repair, and experienced right wrist and knee pain from lifting weights. Exhibit 2 at 67-80.

- On September 29, 2020, Petitioner (39-years old) received the flu vaccine intramuscularly in his left deltoid administered by providers at Homeland

Health Specialists. Exhibit 4 at 2. In his declaration, Petitioner explained that he received the flu vaccine at the college where he taught. Exhibit 3 at ¶ 5.

- Three weeks later, on October 22, 2020, Petitioner visited his primary care provider ("PCP"), complaining of left shoulder pain for the past month. Exhibit 2 at 65. He described normal soreness after receiving the flu shot, but hardly being able to move his arm by the end of the day. He added that he "[h]a[d] never had symptoms like th[at] before." *Id.* After reviewing the x-rays taken that day which revealed no abnormalities, the PCP assessed Petitioner as suffering from acute left shoulder pain, prescribed pain medication (Toradol[5]), ordered PT, and instructed Petitioner to continue to apply ice and heat. *Id.* at 66.

- On November 10, 2020, Petitioner attended his first PT session. Exhibit 2 at 58-61. At this initial evaluation, Petitioner again attributed his shoulder pain to the flu vaccine. *Id.* at 58. Reporting that his pain was decreasing, he described no pain at rest, but sharp, aching, stabbing pain with activity. Although his pain level could reach eight out of ten, Petitioner reported this was only for a "short duration." *Id.* The physical therapist listed several goals with a target date of January 10, 2021. *Id.* at 60-61.

- Throughout November and December 2020, Petitioner attended seven PT sessions. Exhibit 2 at 37-61. On December 29, 2020, he characterized his condition as approximately 50 percent improved. *Id.* at 37. Petitioner continued to report difficulty sleeping/laying on his left side and pain with activity, primarily with pulling. *Id.* at 38. At that visit, it was noted that Petitioner had not attend PT for 30 days. *Id.* Petitioner's sixth PT session occurred on December 1st. *Id.* at 41-44.

- On January 8, 2021, the physical therapist assessed Petitioner as making good progress with mobility. Exhibit 2 at 31. Petitioner exhibited 143 degrees of active range of motion ("ROM") and "minor pain with flexion." *Id.* However, the therapist noted Petitioner's progress related to pain "has been slow." *Id.* Petitioner still reported pain as great as four to five, with a more constant level of two. *Id.* Regarding Petitioner's shoulder strength, the therapist determined he required "[a]dditional strengthening required to restore [normal] shoulder stability." *Id.* at 32.

---

[5] Toradol is a "trademark for preparations of ketorolac tromethamine." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY at 1940 (32th ed. 2012). Ketorolac tromethamine is "a nonsteroidal antiinflammatory drug administered intramuscularly, intravenously, or orally for short term management of pain." *Id.* at 984.

- At PT sessions in January and February 2021, Petitioner continued to show improvement, but also setbacks in response to activity. *E.g.,* Exhibit 2 at 11 (increased pain after moving firewood). By his 16th PT session (on February 24, 2021), he stated that "his shoulder is generally good if he is not using it for lifting." *Id.* at 7. Petitioner also described "persistent pain with use of the shoulder in overhead positions." *Id.*

- On March 9, 2021, Petitioner was assessed as "ha[ving] made great progress towards all goals." Exhibit 2 at 5. However, he was instructed to continue with his home exercise program. *Id.* 4-5. Petitioner described his shoulder as "the best it has been for a long time," reporting it was a "little sore in the morning." *Id.* at 4 (omitting quotation marks in original).

- In his declaration, signed on September 1, 2021, Petitioner asserted that he continued to experience left should pain when performing physical activities such as lifting a trash bag, carrying groceries, filling the wood box, and blowing or shoveling snow. Exhibit 3 at ¶ 10. He asserted that his left shoulder injury "caused [him] pain and impairment for a period lasting longer than six months." *Id.* at ¶ 12.

- On May 13, 2022 (now more than a year from the date of last treatment – yet after the claim's initiation), Petitioner returned to his PCP reporting concerns related to left shoulder clicking. Exhibit 5 at 13. Noting that his "[d]iscomfort [wa]s worse with increased weights, [e]ven 10 pounds," Petitioner maintained his symptoms were the same, albeit not worse, since 2020. *Id.* at 14. In another entry, also referencing his earlier vaccination but stating it occurred in 2019, he reported that "certain parts of his shoulder . . . is now causing clicking and mild discomfort." *Id.* at 14. However, Petitioner "denie[d] any significant pain or weakness." *Id.* at 15. After reviewing x-rays which showed "normal joint spaces, no fracture or other abnormalities," the PCP instructed Petitioner "to use her [sic] shoulder as tolerated," and seek a reevaluation if he developed pain, redness, or weakness. *Id.* at 16.

To satisfy the Vaccine Act's severity requirement in this case, Petitioner must show that he suffered symptoms of his alleged SIRVA beyond March 29, 2021 (assuming a same day onset which the record preponderantly supports). The above medical entries preponderantly suggest Petitioner suffered from pain, primarily with certain movement and positioning, at least several weeks after his PT discharge on March 9, 2021 - thus satisfying that severity requirement.

Petitioner's injury had improved, but not resolved, by March 9th, less than three weeks before the six-month mark. Exhibit 2 at 4-5. Given the slow progress Petitioner made while attending PT sessions in November 2020, through early March 2021, it is unlikely that the injury resolved fully within the subsequent three weeks. The lack of treatment, and therefore contemporaneously-created medical records during this three-week period, does not prevent Petitioner from establishing six-month sequelae. And Petitioner has provided a declaration, signed under penalty of perjury indicating that he continued to have symptoms when performing certain tasks. Exhibit 3 at ¶ 10.

In *Kirby*, the Federal Circuit explained that its holding in *Cucuras* was limited to "the unremarkable proposition that it is not erroneous to give greater weight to contemporaneous medical records than to later, contradictory testimony," but that this principle should not be interpreted as a finding that "the medical records are presumptively accurate and complete, . . . that when a person is ill, he reports all of his problems to his doctor, who then faithfully records everything he is told." *Kirby*, 997 F.3d at 1382-83. In that case, the Circuit determined that the special master's finding of six-month sequela was not arbitrary or capricious, despite the lack of recorded symptoms and the *Kirby* petitioner's general statements of feeling fine or having no complaint. *Id.* at 1383.

Furthermore, Petitioner is not required to establish that he was still experiencing symptoms related to his alleged SIRVA at next appointment on May 13, 2022. Rather, he need only show severity through March 29, 2021. And the mention of an HEP at his PT discharge further supports the premise that Petitioner would not have experienced a full symptom resolution in less than three weeks thereafter. Had Petitioner received other treatment, such as a steroid injection, he may have obtained such accelerated relief - but no injection was administered in this case.

Petitioner's overall limited medical care course suggests a lower pain and suffering award will be proper in calculating damages. And I am not likely to give substantial weight to the 2022 treatment visit, which not only occurred in the context of the claim's filing, but cannot be construed to establish SIRVA-related issues at that time. But it does *not* mean I cannot find the basic requirement of six months severity met. Nor does the intermittent nature of Petitioner's symptoms prevent him from establishing sequela for more than six months. Accordingly, there is preponderant evidence to establish Petitioner suffered the residual effects of his alleged SIRVA for more than six months.

### III.     Additional Requirements for Entitlement

#### A.     Legal Standards

In addition to requirements concerning the vaccination received, the duration of petitioner's injury (discussed above in Section II), and the lack of other award or settlement,[6] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a Hep B vaccine. 42 C.F. R. § 100.3(a)(VIII)(B). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged

---

[6] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* Section 11(c)(1)(A)(B)(D)(E).

signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10) (2017).

### B.   Analysis

Respondent has stated no further objections to compensation, and I find Petitioner has otherwise satisfied all criteria for a Table SIRVA injury following receipt of the flu vaccine. There is no evidence of prior left shoulder pain, inflammation, or dysfunction or an alternative cause for Petitioner's symptoms. *See* 42 C.F.R. § 100.3(c)(10)(i), (iv) (first and fourth QAI criteria). And Petitioner experienced pain within 48 hours of vaccination and exhibited pain and limitations in ROM solely in his left, injured shoulder. *E.g.,* Exhibit 2 at 65 (first report of pain in late October 2020); *see* 42 C.F.R. § 100.3(c)(10)(ii) & (iii) (second and third QAI criteria).

As I have determined in this ruling, the record supports a finding that Petitioner suffered the residual effects of his SIRVA for more than six months. *See* Section 11(c)(1)(D)(i) (the Vaccine Act's six-month severity requirement). Additionally, the vaccine record shows Petitioner received the flu vaccine administered in Minnesota. Exhibit 4 at 2; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i) (requiring administration within the United States or its territories). Additionally, there is no evidence that Petitioner has collected a civil award for his injury. *See* Section 11(c)(1)(E) (lack of prior civil award). Thus, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

### IV.   Appropriate Amount of Compensation

Although I have found Petitioner entitled to compensation, I do not expect the amount awarded for Petitioner's past pain and suffering to be great. Throughout his injury, Petitioner experienced lower levels of pain, primarily with certain movements. He required

only conservative treatment, PT and a HEP. After the initial prescription of 15 tablets of Toradol, to be taken every eight hours as needed for pain, Petitioner required no further prescription pain medication. *See* Exhibit 2 at 66. And the PT records showed the occasional increases Petitioner experienced in late 2020 and early 2021 also were likely related to strenuous physical activities, such as compiling firewood (filling the wood box). *See,* e.g. *id.* at 11.

Petitioner has characterized his later symptoms, reported in May 2022, as related to his earlier injury. However, there is not sufficient evidence in the record as it currently stands to support that assertion. At this appointment, Petitioner reported no pain or weakness, and a symptom (clicking) not previously mentioned. And his statements showed that he had been lifting weights - the activity thought to be responsible for the right wrist and knee pain he experienced in 2019. Exhibit 2 at 69-71, 75-78, 82. Furthermore, it is important to note that this appointment occurred more than 14 months after the Petition was filed (ECF No. 1), as well as several months after I instructed Petitioner to file additional evidence related to severity (ECF No. 18).

Petitioner should not expect a substantial pain and suffering award, given the overall preponderance of evidence on this issue.

## Conclusion

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA and the Vaccine Act's severity requirement needed for both Table and non-Table claims. Petitioner is entitled to compensation in this case.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master